

**SIGNED this 29th day of January, 2020**

_Shelley D. Rucker_
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

                                          No. 1:18-bk-14974-SDR
                                          Chapter 7

Barry Dean Arp and
Lindsey Nicole Arp,
            Debtors;

Douglas R. Johnson, Trustee,
            Plaintiff;

v.

                                                Adversary Proceeding
                                          No. 1:19-ap-1010-SDR

Wilmington Savings Fund Society, FSB, as
Trustee for Stanwich Mortgage Loan Trust A,
Stanwich Mortgage Loan Trust A, and Wilmington
Savings Fund Society, FSB, a/k/a/ WSFS Bank,
            Defendants/Counter-Plaintiffs/Third-Party Plaintiffs;

v.

Barry Dean Arp and
Lindsey Nicole Arp,
            Third-Party Defendants.

1

# MEMORANDUM OPINION

## I.    Procedural History

On February 21, 2019, Douglas R. Johnson, chapter 7 trustee of the debtors' bankruptcy estate ("Trustee" or "Plaintiff"), filed a complaint in this adversary proceeding against Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust A, Stanwich Mortgage Loan Trust A, and Wilmington Savings Fund Society, FSB, a/k/a/ WSFS Bank ("WSFS" or "Defendants").[1] [Doc. No. 1].[2] The parties' dispute arises from a warranty deed in lieu of foreclosure given by the debtors to WSFS in exchange for the release of a deed of trust on real property. Due to a scrivener's error, the deed in lieu of foreclosure described the real property to be conveyed as land which the debtors did not in fact own. Although WSFS attempted to correct the record by having one of its attorneys sign a recorded affidavit of scrivener's error, the recorded deed in lieu of foreclosure was not corrected before the debtors filed bankruptcy.

The Trustee now contends that the deed in lieu of foreclosure was ineffective to transfer the debtors' interest in the real property to the Defendants. Consequently, the Trustee argues that the real property is property of the debtors' bankruptcy estate subject to administration. The Trustee's complaint seeks a declaratory judgment that the Trustee holds title in the real property free and clear of any interest of the Defendants.

On April 15, 2019, the Defendants filed an answer, counterclaim, and third-party complaint. [Doc. No. 16]. Both the counterclaim against the Trustee and third-party complaint against the debtors seek reformation of the deed in lieu of foreclosure. On July 15, 2019, the

---

1 In their pleadings, the parties have not distinguished between Wilmington Savings Fund Society FSB on its own and in its capacity as a trustee for Stanwich Mortgage Loan Trust A. Therefore, the court will not distinguish between the Defendants for purposes of this memorandum opinion.

2 All docket entry reference numbers refer to docket entries for Adversary Proceeding No. 1:19-ap-1010-SDR, unless otherwise noted.

Trustee filed a motion for summary judgment [Doc. No. 27], and on August 1, 2019, the Defendants filed their own motion for summary judgment. [Doc. No. 32]. During a scheduling conference, the debtors represented to the court that they did not wish to substantively participate in arguing the motions for summary judgment and were content to let the Trustee argue their position.

The court held a hearing on September 19, 2019, at which it heard the arguments of counsel. The parties' cross-motions for summary judgment are now ripe for the court's consideration. The court has reviewed the parties' respective motions and briefs, the record before it, and the applicable law. The parties have indicated that they do not believe an evidentiary hearing is required because the relevant material facts are undisputed. However, based on the court's review, neither party has established that it is entitled to judgment as a matter of law because there is insufficient evidence upon which the court can grant summary judgment and there appear to be genuine disputes of material facts. Specifically, the parties have failed to establish which documents are in the chain of title for the real property in dispute. As a result, the court is unable to determine: (1) whether the deed in lieu of foreclosure sufficiently described the property to be conveyed, or (2) whether the affidavit of scrivener's error provided constructive notice sufficient to defeat the Trustee's status as a bona fide purchaser. The court will, therefore, deny both parties' motions for summary judgment.

## II.    Jurisdiction

Title 28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district, provide the court with jurisdiction to hear and decide this adversary proceeding. This court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(F), (H), and (K).

### III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to show conclusively that no genuine dispute of material fact exists, and the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Id.* at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). This standard does not change when both parties move for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

The court's role in deciding a motion for summary judgment "is limited to determining

whether sufficient evidence has been presented to make the issue of fact a proper question for the

factfinder." *Deutsche Bank Nat'l Trust Co. v. Birchfield*, No. 2:16-CV-19-TAV-MCLC, 2017 WL

3444694, at *2 (E.D. Tenn. Aug. 10, 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). It is not the court's role at summary judgment to "weigh the evidence or determine

the truth of the matter." *Id.* (citation omitted). Rather, "the inquiry performed is the threshold

inquiry of determining whether there is a need for a trial -- whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party." *Id.* (quoting *Anderson*, 477 U.S. at 250).

## IV.    Facts

The parties submit to the court that the material facts are not in dispute and that this matter

is appropriate for summary judgment. Although the court has ultimately determined that it does

not have sufficient facts upon which to grant summary judgment, the parties agree that the

following facts are not in dispute.

On April 16, 2004, the debtors purchased Lot 1 in the Valley View acres subdivision in

Bradley County, Tennessee. Lot 1's address is 7471 Mouse Creek Road, Cleveland, Tennessee.

The conveyance was made by a warranty deed from Kastle Home Builders to the debtors ("2004

Warranty Deed"). The 2004 Warranty Deed mistakenly described the purchased property as Lot 2

rather than Lot 1. The 2004 Warranty Deed containing the legal description for Lot 2 was recorded

in the Bradley County Register of Deeds at Book 1431, Page 15.

In 2008, the debtors refinanced the original mortgage through CitiFinancial Services, Inc.

("CitiFinancial"). On January 31, 2008, the debtors executed a promissory note ("2008 Note") and

Deed of Trust ("2008 Deed of Trust") in favor of CitiFinancial. The 2008 Deed of Trust pledged

Lot 2 to secure the 2008 Note, thereby continuing the mistake. The 2008 Deed of Trust with the

5

reference to the wrong lot was recorded in the Bradley County Register of Deeds at Book 1811, Page 417.

Years later, CitiFinancial took action to correct the mistake. On May 22, 2017, CitiFinancial filed a lawsuit in Bradley County Chancery Court against the debtors seeking to reform the 2004 Warranty Deed and 2008 Deed of Trust and quiet title for Lot 1. On December 6, 2017, CitiFinancial assigned the 2008 Note to WSFS, and WSFS thereafter continued the litigation. On March 28, 2018, the Bradley County Chancery Court entered an order that reformed the 2004 Warranty Deed and the 2008 Deed of Trust to correct the property descriptions in both instruments to reflect that the conveyances were of Lot 1 rather than Lot 2 ("Reformation Order"). The Reformation Order stated that it was *nunc pro tunc* to the date of each document's recording. The Reformation Order required that a copy of the order be recorded and cross-referenced with the book and page number for the 2004 Warranty Deed and the 2008 Deed of Trust. A certified copy of the order was recorded with the Bradley County Register of Deeds on April 18, 2018, at Book 2516, Page 46. The parties' stipulated facts do not address whether the Reformation Order was in fact cross-referenced with the 2004 Warranty Deed or with the 2008 Deed of Trust.

On May 17, 2018, the debtors executed a Warranty Deed in Lieu of Foreclosure ("Deed in Lieu") in favor of WSFS. The Deed in Lieu stated that it was given in consideration of the cancellation and extinguishment of the 2008 Note and was executed, delivered, and accepted in lieu of foreclosure under the 2008 Deed of Trust. The Deed in Lieu was recorded on May 30, 2018, in the Bradley County Register of Deeds at Book 2524, Page 753.

Crucially, the Deed in Lieu resurrected the mistake in the property description that the Reformation Order had corrected. It referenced the property conveyed as Lot 2, which the debtors did not own, rather than Lot 1, which the debtors did own. Specifically, the Deed in Lieu stated

6

that the debtors conveyed:

real property (the "Land") located in Bradley County, TN, and more particularly described as follows:

LOCATED IN THE THIRD CIVIL DISTRICT, BRADLEY COUNTY, TENNESSEE:

BEING Lot No. Two (2), a re-subdivision of Valley View Acres, final plat of Henegar's Baptist Church Property as recorded in Plat Book 17, Page 78, in the Register's Office of Bradley County, Tennessee.

FOR PRIOR TITLE see Warranty Deed recorded in Book 226, Page 814, in the Register's Office of Bradley County, Tennessee.

Being the same property as conveyed to Grantors by Warranty Deed Book 1431, page 15, in the Register's Office of Bradley County, Tennessee.

The final clause, the "derivation clause," referred to the 2004 Warranty Deed that had been reformed by the Reformation Order. The Deed in Lieu also contained a reference to the existing 2008 Deed of Trust, which it referred to as "that certain Mortgage/Deed of Trust dated January 31, 2008 in favor of CitiFinancial Services, Inc, in Book: 1811 at Page: 417 . . . of the Public Records of Bradley County, TN."

By the terms of the Deed in Lieu, the debtors as grantors agreed to "warrant and forever defend all and singular the Property, subject as aforesaid, unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." The Deed in Lieu provided that the lien of the 2008 Deed of Trust did not merge with the ownership interest conveyed by the Deed in Lieu. It further provided that the "Liens [*sic*] shall remain valid and continuous and in full force and effect, unless and until released by written instruments . . . executed by the Grantee."

Following execution of the Deed in Lieu, WSFS executed and recorded a release of the 2008 Deed of Trust. The release was recorded on May 30, 2018, in the Bradley County Register

of Deeds at Book 2525, Page 31.  The release referenced the lien recorded in Book 1811, Page 417. The document recorded at this book and page number is the 2008 Deed of Trust, which was the other document reformed by the 2018 Reformation Order. The release also provided the legal description for Lot 1, which is the property the debtors owned.

According to the Deed in Lieu, it was prepared by Christian Decker, of Shapiro and Ingle, LLP, in Charlotte, North Carolina. Mr./Ms. Decker was an agent and/or attorney for WSFS when he/she prepared the Deed in Lieu. About four months after delivery of the Deed in Lieu to WSFS, on September 14, 2018, a document was filed in the Bradley County Register of Deeds entitled "Attorney's Affidavit in Furtherance of Title" ("Davis Affidavit"). The Davis Affidavit was signed by Jonathan Blake Davis, a foreclosure attorney with Shapiro and Ingle, LLP. Mr. Davis swore that he had reviewed the chain of title and that a scrivener's error led to Mr./Ms. Decker's inclusion in the Deed in Lieu of the property description for Lot 2 rather than Lot 1. The Davis Affidavit did not indicate what Mr. Davis found in the record that led him to that conclusion. The documents referenced in the Davis Affidavit are the Deed in Lieu and the 2004 Warranty Deed.

On October 30, 2018, the debtors filed a chapter 7 bankruptcy petition.

## V.    Analysis

Pending before the court are the parties' cross-motions for summary judgment. The Trustee posits that the Deed in Lieu did not convey an interest in Lot 1 to WSFS because it did not accurately describe the property to be conveyed.[3] [Doc. No. 27, at 3]. Therefore, the Trustee contends that the Deed in Lieu is void, that the debtors remained the record owners of Lot 1, and that, on the day they filed bankruptcy, Lot 1 became an asset of their bankruptcy estate to be

---

3 For purposes of his motion for summary judgment, the Trustee assumes that the debtors intended to transfer their property, Lot 1, to WSFS in lieu of foreclosure. [Doc. No. 27, at 2-3].

administered by the Trustee. [*Id.*]. The Trustee maintains that if the court finds that the Deed in Lieu effectively conveyed Lot 1 then all other issues would be moot. [*Id.* at 7].

The Defendants argue that the Deed in Lieu effectively conveyed Lot 1 because it accurately described the property to be conveyed in spite of the mistaken reference to Lot 2. In support of this position, the Defendants point to the derivation clause in the Deed in Lieu, which refers to the 2004 Warranty Deed that was reformed by the Chancery Court. [Doc. No. 41, at 7-8]. The Defendants have also counterclaimed, arguing that if the court finds the Deed in Lieu was ineffective to transfer ownership, the Deed in Lieu should be reformed under the doctrine of mutual mistake. [*Id.* at 9].

With respect to reformation, the Trustee argues that the Defendants may not reform the deed over the Trustee's rights as a bona fide purchaser under 11 U.S.C. § 544(a)(3). The Defendants counter that the Trustee received constructive notice of the Defendants' interest in the property sufficient to defeat his status as a bona fide purchaser by virtue of the Reformation Order, the Davis Affidavit, and "other deed records." [Doc. No. 41, at 8-9].

The court notes at this point that the parties' arguments on summary judgment have somewhat diverged from the specific causes of action alleged in the Trustee's complaint. The Trustee's complaint appears to have been focused largely on the effect of the Davis Affidavit of scrivener's error and whether such an affidavit could constitute a transfer of an interest in Lot 1. For example, Count I of the Trustee's complaint seeks a declaration that the Davis Affidavit is invalid *ab initio*. [Doc. No. 1, at 6]. Count II seeks a declaration that the Davis Affidavit did not effectuate a transfer of the debtors' interest in the property to WSFS. [*Id.*]. Count III seeks to avoid any transfer of the debtors' interest resulting from the Davis Affidavit as a fraudulent transfer. [*Id.* at 7-8]. The complaint does not contain a Count IV, but Count "V" [*sic*], seeks recovery of any

9

such fraudulent transfer under 11 U.S.C. § 550. [*Id.* at 8-9]. As will be explained in more detail below, the Defendants have now admitted that the Davis Affidavit was not a conveyance instrument, and the Trustee no longer appears to be pursuing these causes of action. [*See* Doc. No. 27, at 6 n.8, 10 n.12; Doc. No. 32, at 6 n.1].

The court interprets the Trustee's complaint as seeking declaratory relief that the Defendants have no interest in Lot 1 either as owner or lienholder, and, therefore, that the Trustee holds title to the property free and clear of any interest of the Defendants. The Defendants' countercomplaint seeks declaratory relief that the Defendants' right to reformation is not barred by the Trustee's status as a bona fide purchaser. The court will turn now to each parties' respective motion for summary judgment.

   *1. The Trustee's motion for summary judgment.*

The Trustee first argues that he controls the debtors' interest in Lot 1 because on the day they filed bankruptcy the debtors still owned Lot 1. [Doc. No. 47, at 5]. The Trustee's argument is that the Deed in Lieu did not transfer ownership in Lot 1 to WSFS because it did not accurately describe Lot 1 as the property to be conveyed. Consequently, the Trustee argues that he can hold, control, and administer Lot 1 as property of the bankruptcy estate. [*Id.* at 6].

The first question the court must consider is whether the Deed in Lieu, which in part contained a description of Lot 2, a property which the debtors did not own, was effective to convey the debtors' interest in Lot 1, a property which they did own. Under 11 U.S.C. § 541, the debtors' bankruptcy estate consists of "all legal or equitable interests of the debtor[s] in property as of the commencement of the case" except in circumstances not relevant here. *See* 11 U.S.C. § 541(a)(1); *see also Walker v. Elam (In re Fowler)*, 201 B.R. 771, 775 (Bankr. E.D. Tenn. 1996). Pursuant to 11 U.S.C. § 541(a)(1), a "trustee stands in the shoes of the debtor. . . ." *Bash v. Textron Fin. Corp.*

*(In re Fair Fin. Co.)*, 834 F.3d 651, 675 (6th Cir. 2016) (quoting *Stevenson v. J.C. Bradford & Co.
(In re Cannon)*, 277 F.3d 838, 853 (6th Cir. 2002)); *see also Farinash v. UpRight Law, LLC (In re
Elrod)*, No. 1:16-bk-12562-SDR, Adv. No. 1:17-ap-1016-SDR, 2017 WL 5499714, at \*14 (Bankr.
E.D. Tenn. Nov. 14, 2017).

Unless federal law speaks to the matter, property rights and interests are determined by
state law. *See In re Poole*, --B.R.--, No. 4:16-bk-12638-SDR, 2019 WL 4805830, at \*4 (Bankr.
E.D. Tenn. Sept. 30, 2019) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L.
Ed. 136 (1979); *Town Ctr. Flats, LLC, v. ECP Commercial II, LLC*, 855 F.3d 721, 724 (6th Cir.
2017)). Tennessee law, therefore, controls whether WSFS obtained an interest in Lot 1 by virtue
of the Deed in Lieu.

In Tennessee, deeds or other instruments conveying an interest in real property must
contain a description of the property being conveyed. Tenn. Code Ann. § 66-5-103; *see also Jahn
v. Bank of America, N.A., (In re Lawson)*, No. 10-11001, Adv. No. 10-1330, 2011 WL 1167115,
at \*9 (Bankr. E.D. Tenn. Mar. 28, 2011). Therefore, "[t]o be valid, a deed 'must designate the land
intended to be conveyed with reasonable certainty.' Several courts have held that '[t]he test is
whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can
locate the land and establish the boundaries.'" *In re Lawson*, 2011 WL 1167115, at \*9 (quoting
*CC Holdings (Tennessee), Inc. v. Tennessee Gas Transp., Inc. (In re Tennessee Gas Transp.)*, 169
B.R. 643, 644-45 (Bankr. M.D. Tenn. 1994)). As this court previously explained in *In re Lawson*,
"[i]f the property description is insufficient, the deed is void and transfers no interest in the
grantor's property." *Id.* (quoting *In re Tennessee Gas Transp.*, 169 B.R. at 646).

The Trustee relies heavily on this court's decision in *In re Lawson*, in which the court found
that the chapter 7 trustee could avoid a deed of trust where the body of the deed of trust contained

11

the correct address for the property, but the legal description in an exhibit to the deed of trust described a different property also owned by the debtor and her husband. *Id.* at *10. In that case, the court noted that the granting clause of the deed of trust referred to an exhibit which "provide[d] a very definite description of a tract of land and its address," but it was not the property the parties intended to be taken as collateral. *Id.* The deed of trust also contained an address that described a second property, which was the one intended to serve as collateral. *Id.* The court found that the deed of trust was ambiguous because it "contain[ed] information about two entirely different pieces of property, both owned by the [d]ebtor and her husband." *Id.* at *11. The parties to the deed of trust agreed "that the wrong legal description was attached and the deed should be reformed." *Id.* at *13. However, when the bank proffered parol evidence to aid in interpreting the deed of trust, the chapter 7 trustee objected, and the court determined that the use of such extrinsic evidence was not allowed.

In reaching that conclusion, the court reviewed Tennessee property law on the use of parol evidence to resolve an ambiguous property description in a deed of trust. The court considered the general rule of interpretation of deeds under Tennessee law as set forth in *Jones v. Mabry*, 225 S.W.2d 561 (Tenn. Ct. App. 1949):

> It may be said generally that a deed will not be declared void for uncertainty in description if, aided by parol evidence of extrinsic circumstances and conditions existing at the date of the deed, the property intended to be conveyed can be determined with reasonable certainty. To effectuate the intention of the parties, the courts will apply the maxim, "That is certain which is capable of being made certain."

*Id.* at *11 (quoting *Jones*, 225 S.W.2d at 563) (internal quotations and citations omitted). The court further observed that under Tennessee law, parol evidence is admissible where it "does not alter or contradict the effect or terms of the instrument, but only particularizes the description which the

instrument gives of the premises." *Id.* at *12 (quoting *Newton v. Herskowitz (In re Gatlinburg Motel Enterps., Ltd.)*, 119 B.R. 955, 967 (Bankr. E.D. Tenn. 1990)).

Ultimately, the court in *In re Lawson* did not permit the introduction of extrinsic evidence to resolve the ambiguous property description, explaining that:

> Unlike the cases cited by the parties with insufficient or missing descriptions, this Deed of Trust has too many descriptions. Each might be sufficient on its own, but contained in the same document together, their coexistence makes the determination of the particular tract to be conveyed impossible. Only alteration by deletion clears up the ambiguity. The parole evidence which the defendant seeks to have the court consider relates to altering or contradicting the description given, and that is not permitted.

*Id.* at *12. The court found that the deed of trust was "confusing and ambiguous on its face and fail[ed] reasonably to identify the particular property to be conveyed." *Id.* at *14. Accordingly, the court found that the deed of trust failed to grant a lien to the bank and that the trustee could avoid the lien under the powers granted to him by 11 U.S.C. § 544(a) and recover the debtor's interest for the benefit of the estate. *Id.*

The Trustee argues that *In re Lawson* should control the outcome of this case. The court agrees that the facts are similar. Both cases involve an instrument containing a description of property that is not the property in which the parties intended to convey an interest. However, the court finds *In re Lawson* factually distinguishable in at least one important way. As the court later observed in a similar case, "[t]he ambiguity [in *In re Lawson*] arose from the fact that the instrument 'contain[ed] information about two entirely different pieces of property, both owned by the [d]ebtor and her husband.'" *Jahn v. FirstBank (In re Jones)*, No. 11-10158, Adv. No. 13-1007, 2013 WL 5347452, at *6 (Bankr. E.D. Tenn. Sept. 23, 2013) (quoting *In re Lawson*, 2011 WL 1167115, at *11). The fact that both properties described in the deed of trust were owned by the debtor and her husband made it impossible to determine from the four corners of the document

which property they intended to convey as collateral. This fact is not present in the current case. One of the properties referenced in the Deed in Lieu was never owned by the debtors and thus could not have been conveyed by them. The court reasonably infers that the debtors did not intend to convey by warranty deed property which they did not own in consideration for a release of the deed of trust.

From the court's review of relevant caselaw, Tennessee courts take a more flexible approach than the one suggested by the Trustee when determining whether an instrument sufficiently describes the real property to be conveyed when the instrument references property the debtor does not own. For example, in *ABN AMRO Mortgage Group, Inc. v. Southern Security Federal Credit Union*, 372 S.W.3d 121 (Tenn. Ct. App. 2011), the Tennessee Court of Appeals considered the effect of a scrivener's error on the validity of a deed of trust. In that case, the homeowners obtained a first mortgage on property known as 8320 Bon Lin Drive, Bartlett, Tennessee, which was the same property known as Lot 10 of the Rolling Woods Subdivision shown by plat book and page number in the Register's Office of Shelby County, Tennessee. *Id.* at 123. A first deed of trust was prepared and recorded that incorrectly identified the property as Lot 16 rather than Lot 10. *Id.* at 123-24. The first deed of trust also contained a derivation clause describing the property as the "the same property as conveyed to Charles Giacosa and wife, Pamela Giacosa from Roland J. Holeczko and Candace D. Holeczko, husband and wife by Warranty Deed dated May 23, 2001, recorded June 29, 2001, in Book LD, Page 1101 in the Register's Office of Shelby County, Tennessee." *Id.* at 123. The 2001 Warranty Deed referenced in the derivation clause contained the correct lot number. *Id.* at 129.

The homeowners later obtained a second mortgage on the property with a different mortgagee. *Id.* at 124. When the second deed of trust was prepared and recorded, it correctly

14

identified the property as Lot 10. *Id.* In subsequent foreclosure proceedings, a question arose as to whether the first mortgagee held a valid deed of trust, and the first mortgagee sued to reform the first deed of trust to correct the scrivener's error. *Id.* The trial court found in favor of the first mortgagee, and the Tennessee Court of Appeals affirmed, holding that the first deed of trust was valid because it "sufficiently designated the land intended to be mortgaged with reasonable certainty as required under Tennessee law." *Id.* at 130 (internal quotations and citations omitted).

In reaching this decision, the Court of Appeals quoted heavily from the *Corpus Juris Secundum*:

> Generally, any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence.

> Courts are reluctant to declare instruments void for an uncertain description and will look to attendant facts to make them certain. The sufficiency of a description in a deed is not to be measured by any inflexible rule or sets of rules. While it has been held that the function of a description of the property in conveyances is to identify the land covered by the conveyance, it has also been stated that the office of a description is not to identify the land, but to afford a means of identification.

> Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which furnishes the means of identification, of the property covered by the deed or which it was intended to convey thereby with reasonable certainty, and without the exercise of arbitrary discretion. A conveyance is also good, if the description can be made certain within the terms of the instrument. A description from which a surveyor can locate the land and by means of which the surveyor is able to establish its boundaries, or by which a party familiar with the locality is enabled to identify the premises intended to be conveyed with reasonable certainty, is sufficient. A deed will not be held void for uncertainty of description if by any reasonable construction it can be made available. A court will declare a deed void for uncertainty of description only where, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument remains a mere matter of conjecture, or where the description cannot be made applicable to but one definite tract.

> The description of property need not be determined by reference to the deed alone. Extrinsic facts pointed out in the description may be resorted to in order to ascertain the land conveyed, and the property may be identified by extrinsic

evidence. Although such extrinsic evidence must be sufficient to establish the identity of the land sought to be conveyed, it must not add to, enlarge, or in any way change the description contained in the conveyance, and the writing itself must furnish the hinge or hook on which to hang the aid thus afforded, without resorting to any secret or undisclosed intention of the parties thereto.

If part of the description is proved inconsistent on being applied to the premises, it does not vitiate the deed if a sufficient part of the description remains for purposes of identification or where the grantor's intent is apparent. However, if the deed contains inconsistent descriptions either of which is sufficient to identify different parcels of property, and there is nothing to show the grantor's intention, the deed is void for uncertainty. Where all the particulars in a description are essential, the description in the deed must agree with every particular, or nothing will pass, but where they are not all essential, and it does not so agree, if it is sufficient to identify the estate granted, the deed is good.

*Id.* at 127-28 (quoting 26A C.J.S. *Deeds* § 51 (2011)).

The *ABN AMRO* court observed that "Tennessee case law is in line with the *Corpus Juris Secundum* on this point – to be valid, a deed 'must designate the land intended to be conveyed with reasonable certainty.'" *Id.* at 128 (quoting *Phoenix Mut. Life Ins. Co. v. Kingston Bank & Trust Co.*, 112 S.W.2d 381, 382 (Tenn. 1938); *Freeman v. Martin Robowash, Inc.*, 457 S.W.2d 606, 609 (Tenn. Ct. App. 1970); *Sheffield v. Franklin*, 222 S.W.2d 974, 978 (Tenn. Ct. App. 1947)). The court cited the following standard used by Tennessee courts when determining whether extrinsic evidence may be used to locate land in an ambiguous deed:

Where an instrument is so drawn that, upon its face, it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located. But where the description employed, is one that must necessarily apply with equal exactness to any one of an indefinite number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract by the description.

*Id.* (quoting *Dobson v. Litton*, 45 Tenn. 616 (Tenn. 1868)).

The trial court in *ABN AMRO* upheld the property description in the first deed of trust even though it contained an erroneous lot number based on its reasoning that the deed of trust: (1)

included the correct street address; and (2) referenced a warranty deed in the derivation clause, which warranty deed correctly identified the property as Lot 10 rather than Lot 16. *Id.* at 129. The Court of Appeals affirmed, concluding that the trial court correctly determined that the first deed of trust "is so drawn that, upon its face, it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only. . . ." *Id.* (quoting *Dobson*, 45 Tenn. at 620). Accordingly, the Court of Appeals determined that the "trial court correctly concluded that the description was sufficiently definite and exclusive to permit the extrinsic evidence. . . to supply the correct lot number." *Id.* at 129-30 (citing *Wilson v. Calhoun*, 157 Tenn. 667, 11 S.W.2d 906, 907-08 (Tenn. 1928)). Based on the "totality of the circumstances," the Court of Appeals concluded that the first deed of trust "sufficiently designated the land intended to be mortgaged with reasonable certainty as required under Tennessee law." *Id.* at 130 (internal quotations and citations omitted).

In *Jahn v. FirstBank (In re Jones)*, No. 11-10158, Adv. No. 13-1007, 2013 WL 5347452 (Bankr. E.D. Tenn. Sept. 23, 2013), the court also considered the "totality of the circumstances" when determining the sufficiency of the property description in a deed of trust. *Id.* at *6. In that case, the deed of trust incorrectly referred to a condominium unit as "Lot 224, German Creek Resort Subdivision, of record in Plat Book 2, Page 94, in the Register's Office for Grainger County, Tennessee, to which map specific reference is made for a more particular description." *Id.* at *2. In fact, the correct unit number of the condominium was B-204, and the recorded plat did not contain a Lot 224. *Id.* at *1-2. In addition to the incorrect reference to Lot 224, however, the deed of trust also included the correct street address of the condominium, 224 Sandpiper Lane, Bean Station, Tennessee, 37708, as well as a derivation clause describing the property as being the same property conveyed to the homeowners by unit deed with reference to the correct book and page number. *Id.* at *2-3.

The chapter 7 bankruptcy trustee sought a determination that the deed of trust was "fatally defective," did not grant the bank a lien on the property, and that, if the bank had only an equitable lien, such lien was avoidable under section 544 of the Bankruptcy Code. *Id.* at *1. Relying heavily on the decision in *ABN AMRO*, the court observed that "there must be a flexible approach to determining the sufficiency of a property description in a deed, based on the totality of the circumstances presented in each particular case." *Id.* at *6. The court noted that the deed of trust "included the correct street address as shown by [extrinsic evidence], and the derivation clause referred to an instrument (the unit deed) that correctly identified the property." *Id.* Despite the fact that the deed of trust "contained a mistaken reference to a lot number," relying on the street address, the derivation clause, and the fact that the lot number in the description did not exist, the court held that the property description "sufficiently designated the land intended to be mortgaged with reasonable certainty as required under Tennessee law." *Id.* (internal quotation and citation omitted).

In reaching this conclusion, the court observed that "the deed of trust refers necessarily to some existing tract of land, and its terms can be applied to that one tract only." *Id.* (internal quotations omitted). In contrast to the ambiguity presented in *In re Lawson* where the deed of trust referred to two entirely different properties each owned by the debtor and her husband, the court in *In re Jones* found:

> [T]he grantor's intent is apparent. It is apparent from the fact that the lot reference is obviously erroneous since the lot number is the same as the condominium's official street address, from the fact that there is no such lot number on the referenced plat, and from the fact that the other two descriptions of the property in the deed of trust are accurate references to the condominium.

*Id.* (internal quotations and citations omitted).

18

Having considered the above cases, the court disagrees with the Trustee's argument that the simple fact that the Deed in Lieu contains the wrong lot number in the granting clause automatically invalidates the deed. Tennessee case law is clear that a deed may nevertheless sufficiently describe a property despite such a mistake. In determining the sufficiency of a property description in a conveyance with multiple descriptions, one of which is not a property capable of being conveyed by the grantor, the court should take a flexible approach and consider the totality of the circumstances. The court may consider extrinsic evidence where necessary to ascertain the intent of the parties.

The facts presented in this case are similar to those presented in *ABN AMRO* and *In re Jones.* In both of those cases, the relevant instrument contained one incorrect reference and two correct references. As in those cases, the granting clause of the Deed in Lieu in this case contains an incorrect reference to Lot 2. Here, too, the Deed in Lieu contains references to recorded documents in the chain of title. First, the derivation clause states that the property is "the same property as conveyed to Grantors by Warranty Deed Book 1431, page 15, in the Register's Office of Bradley County, Tennessee." Second, the deed in lieu also refers to the "Mortgage/Deed of Trust dated January 31, 2008 in favor of CitiFinancial Services, Inc, in Book:1811 at Page 417 . . . of the Public Records of Bradley County, TN."

However, these latter references in the derivation clause to the 2004 Warranty Deed and to the 2008 Deed of Trust pose an additional complication not presented in *ABN AMRO* or *In re Jones.* The Deed in Lieu cites the book and page number where these instruments can be found in the Bradley County Register of Deeds. However, these instruments are themselves facially incorrect as they also originally referenced the wrong lot number. As set out above, the 2004 Warranty Deed, recorded at Book 1431, Page 15, and the 2008 Deed of Trust recorded at Book

1811, Page 417 in the Bradley County Register of Deeds, both referenced Lot 2. But for the Reformation Order entered by the Bradley County Chancery Court on April 3, 2018, these transfer documents do not provide the correct description of the property to be conveyed. The court, however, cannot ignore the existence of the Reformation Order.

At this point, the court's analysis gives rise to a genuine dispute of a material fact. The Reformation Order reformed the 2004 Warranty Deed and the 2008 Deed of Trust to correct the legal description in those instruments *nunc pro tunc* to the date of each such recording. It also provided that a copy of the order "be recorded in the Bradley County Register of Deeds cross-referencing the warranty deed recorded in Book 1431, Page 15 and the deed of trust recorded in Book 1811, Page 417." A copy of the order attached to the Trustee's complaint indicates that it was recorded in the Bradley County Register of Deeds at Book 2516, Page 46 on April 18, 2018.

Critically, however, there is no indication either on the face of the Reformation Order or elsewhere in the record as to whether the Reformation Order actually was cross-referenced with the 2004 Warranty Deed or the 2008 Deed of Trust per the Chancery Court's instructions. In the court's view, if the Reformation Order were properly cross-referenced, then this case more closely resembles the facts presented in *ABN AMRO* and *In re Jones*. If that were the case, then a title search back from the Deed in Lieu using its derivation clause would reveal the Reformation Order confirming that the debtors owned Lot 1 rather than Lot 2. At that point, the Deed in Lieu would contain at least two accurate references to the property (the derivation clause describing the property the debtors owned and the reference to the 2008 Deed of Trust) and one inaccurate reference (the granting clause describing Lot 2). Given that the inaccurate description of the property described property which the debtors did not own, the court could differentiate this case from *In re Lawson* and conclude that the Deed in Lieu sufficiently described the property and was,

20

therefore, a valid transfer.[4] On the contrary, if the Reformation Order were not accurately cross-referenced such that it would not be revealed in a title search from the Deed in Lieu, then the court would be hard pressed to find the Deed in Lieu valid where every reference in it to the property conveyed either contained an incorrect description or led back to a document in the chain of title that facially contained an incorrect description.

The Trustee has argued that the Reformation Order was not cross-referenced to the 2004 Warranty Deed and that there is no evidence in the record of what a title search would reveal. [September 19, 2019 hearing at 10:51:50; Doc. No. 47, at 11, 14 n.14]. The Defendants, on the other hand, contend that a title search from the 2004 Warranty Deed "would reveal the Chancery Court [o]rder establishing that the 2004 Warranty Deed was reformed to refer to Lot 1." [Doc. No. 41, at 5]. However, there is no evidence in the record to support either assertion.[5] Consequently, whether a title search would reveal that the 2004 Warranty Deed and the 2008 Deed of Trust were reformed by the Chancery Court order is a material fact in genuine dispute.

Notably, the parties did not offer proof on the search logic used in the Bradley County Register of Deeds office or offer the affidavit of Mr. Davis as the expert testimony of a title searcher. Viewing the facts in the light most favorable to the Defendants, the court could infer that the Defendants, having obtained an order of reformation requiring that it be cross-referenced to the reformed instruments, would have complied with the court order and taken the necessary steps

---

4 The court notes that the debtors executed a conveyance document meeting the requirements of a warranty deed and, therefore, containing covenants of seisin and title. *See* Tenn. Code Ann. § 66-5-103(1); *see also Thompson v. Thomas*, 499 S.W.2d 901, 903 (Tenn. Ct. App. 1973). The court could also consider the fact that the Deed in Lieu should be construed in such a way that it is consistent with the nature of the instrument used.

5 For purposes of summary judgment, the court has not considered Exhibits I and J attached to the Defendants' response. [Doc. Nos. 41-9, 41-10]. These exhibits appear to be printed pages from a Bradley County website purporting to show WSFS as the record owner of the property. However, the exhibits are undated, not authenticated, and were not "in the record" at the time the parties' moved for summary judgment. *See* Fed. R. Civ. P. 56(c)(1), (3); *see also Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-CV-00666, 2017 WL 5467152, at *5 (N.D. Ohio Nov. 14, 2017) (citing *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 524 (6th Cir. 2017) (en banc) (Sutton, J., concurring)).

to do so. The court also notes that the Davis Affidavit stated that Mr. Davis' "personal knowledge in having reviewed the chain of title" brought him to the knowledge that the incorrect legal description was due to a scrivener's error. The only documents referenced in the Davis Affidavit are the Deed in Lieu and the 2004 Warranty Deed, but the court could reasonably infer that Mr. Davis saw the Reformation Order in reaching his conclusion. The court finds that the Trustee has not demonstrated that he is entitled to judgment as a matter of law based on the facts before the court. Accordingly, the court will deny the Trustee's motion for summary judgment.

2. *The Defendants' motion for summary judgment.*

The court now turns to address the Defendants' motion for summary judgment on their countercomplaint for reformation of the Deed in Lieu. For purposes of analyzing the Defendants' motion for summary judgment, the court will assume that the Deed in Lieu was ineffective to convey ownership and that the debtors still owned Lot 1 on the day they filed bankruptcy.

Under Tennessee law, "[r]eformation is an equitable doctrine by which courts may correct a mistake in a writing so that it fully and accurately reflects the agreement of the parties." *Sipes v. Sipes*, No. W2015-01329-COA-R3-CV, 2017 WL 417222, at *3 (Tenn. Ct. App. Jan. 31, 2017) (quoting *Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. App. 2001) (internal quotations omitted)). Courts strive to "give effect to the intention of the parties" at the time they created the deed, and the "basic purpose of reformation is to make the contract conform to the real intention of the parties." *Deutsche Bank Nat'l Trust Co. v. Birchfield*, No. 2:16-CV-19-TAV-MCLC, 2017 WL 3444694, at *4–5 (E.D. Tenn. Aug. 10, 2017) (quoting *Ewing v. Smith*, No. 85-294-II, 1986 WL 2582, at *3 (Tenn. Ct. App. Feb. 26, 1986); *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968) (internal quotations omitted)). As the court explained in *Deutsche Bank National Trust Company*:

> In order for a court to reform a deed, "[t]he error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's

mistake induced by the other party's fraud." [*Holiday Hosp. Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006)]. A mutual mistake is "a mistake common to all the parties to the written contract or the instrument or in other words it is a mistake of all the parties laboring under the same misconception." *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962); *see Town of McMinnville v. Rhea*, 316 S.W.2d 46, 50 (Tenn. Ct. App. 1985) ("A mistake may be defined to be an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent." (internal citation omitted)); *see also Barker v. Harlan*, 71 Tenn. 505, 508 (1879) (stating that a mistake, in order to be the subject of correction, "must appear to have been a mutual mistake, not merely the oversight of one of the parties"). Mutual mistake includes, for instance, "[w]here land is sold and the deed conveys more or less than the contract called for." *Town of McMinnville*, 316 S.W.2d at 50 (internal citation omitted). Reformation requires clear and convincing evidence of the mutual mistake. *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006).

*Id.* at *5.

There is no dispute that the inclusion of Lot 2 in the Deed in Lieu was a mutual mistake. Both parties to the Deed in Lieu believed they were resolving the debt and security interest in Lot 1. They had already been through reformation litigation clarifying which lot the debtors owned and had mortgaged. However, reformation due to mutual mistake is not an available remedy "where third parties have acquired an interest in real property omitted from a deed without notice of the original grantee's adverse claim." *In re Lawson*, 2011 WL 1167115, at *4 (quoting *Chase Manhattan Bank v. Edmondson (In re Cunningham)*, 48 B.R. 509, 512 (Bankr. M.D. Tenn. 1985)); *see also Deutsche Bank Nat'l Trust Co.*, 2017 WL 3444694, at *5 ("A deed may not be reformed due to mutual mistake 'if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments.'") (quoting *Minton v. Long*, 19 S.W.3d 231, 241 (Tenn. Ct. App. 1999)).

In this case, the Trustee argues that the Deed in Lieu cannot be reformed to favor the Defendants due to his intervening rights as a bona fide purchaser. [Doc. No. 47, at 16]. Under 11

23

U.S.C. § 544(a) of the Bankruptcy Code, a trustee has the right and power, as of the date of the

commencement of the bankruptcy case, to avoid any transfer or obligation of the debtor which is

avoidable by a hypothetical bona fide purchaser of real property from the debtor.[6] 11 U.S.C. §

544(a)(3); *Jones v. First Cmty. Bank E. Tenn. (In re Silver Dollar, LLC)*, 2008 WL 53695, at *2

(E.D. Tenn. Jan. 2, 2008); *see also Walker v. Elam (In re Fowler)*, 201 B.R. 771, 778 (Bankr. E.D.

Tenn. 1996) ("Section 544(a)(3) provides a trustee with the rights and powers of a bona fide

purchaser of real property from the debtor if a hypothetical buyer could have obtained the status

of a bona fide purchaser at the time the bankruptcy was commenced.").

   The rights and powers of the trustee as a bona fide purchaser are determined by state law.

*In re Silver Dollar, LLC*, 2008 WL 53695, at *2 (citing *In re Tate*, No. 99-31027, 2000 WL

33912550, at *2 (Bankr. E.D. Tenn. 2000)). A "bankruptcy trustee is not bound by his own

personal knowledge." *In re Don Williams Constr. Co.*, 143 B.R. 865, 869 (Bankr. E.D. Tenn.

1992); *see also* 11 U.S.C. § 544(a). Rather, a trustee is charged with having notice if, under

Tennessee law, "the facts would put a purchaser on notice." *In re Don Williams Constr. Co.*, 143

B.R. at 869 (citation omitted). Tennessee law defines a bona fide purchaser as "one who buys for

valuable consideration without knowledge or notice of facts material to the title." *In re Silver*

*Dollar*, 2008 WL 53695, at *3; *see also Henderson v. Lawrence*, 369 S.W.2d 553, 556 (Tenn.

---

6 Section 544(a)(3) provides as follows:

    (a)  The trustee shall have, as of the commencement of the case, and without regard to any knowledge
        of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of
        the debtor or any obligation incurred by the debtor that is voidable by-
        . . .
        (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom
        applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser
        and has perfected such transfer at the time of the commencement of the case, whether or not such a
        purchaser exists.

11 U.S.C. § 544(a)(3).

1963). As a hypothetical bona fide purchaser under section 544(a)(3), the Trustee "is deemed to have conducted a title search, paid value for the property, and perfected [his] interest as a legal titleholder as of the date of the commencement of the case." *In re Silver Dollar*, 2008 WL 53695, at *3 (citing *First Am. Nat'l Bank v. Miller (In re Miller)*, 286 B.R. 334, 343 (Bankr. E.D. Tenn. 1999)). As the court explained in *In re Silver Dollar*, however, the Trustee's "right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which the Trustee would have constructive notice under state law." *Id.* (citation omitted).

In this case, the Defendants argue that the "deed records," the Reformation Order, and the Davis Affidavit of scrivener's error all put the Trustee on constructive notice that WSFS asserted an interest in the property sufficient to defeat the Trustee's status as a bona fide purchaser. [Doc. No. 41, at 10]. In Tennessee, constructive notice "is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice." *Bank of Am. v. Greene*, 465 B.R. 789, 796 (E.D. Tenn. 2012) (quoting *Blevins v. Johnson Cnty.*, 746 S.W.2d 678, 682 (Tenn. 1988)). Tennessee law also recognizes the concept of inquiry notice. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 485 (Tenn. 2012). "[I]nquiry notice means that 'whatever is sufficient to put a person on inquiry' is 'notice of all the facts to which that inquiry will lead,' when pursued 'with reasonable diligence and good faith.'" *Id.* (quoting *Blevins*, 746 S.W.2d at 683; *Stracener v. Bailey*, 737 S.W.2d 536, 539 (Tenn. Ct. App. 1986)); *see also Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950); *Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 290 (Tenn. Ct. App. 2012) ("[R]ecord notice is only one of many ways by which a subsequent purchaser may be put on notice of another's interest in land. . . .[O]ne cannot be a good-faith purchaser if a reasonable investigation

25

of the property would have revealed the existence of a conflicting claim.") (quoting 112 AM. JUR. 3D *Proof of Facts* § 12 (2010)).

The court is not persuaded that the Defendants have carried their burden to show they are entitled to judgment as a matter of law. Regarding the "deed records" and the Reformation Order, the court understands the Defendants' argument to be that the references contained in the Deed in Lieu to the 2004 Warranty Deed and the 2008 Deed of Trust, which were subsequently corrected *nunc pro tunc* by the Reformation Order, put the Trustee on notice of WSFS's ongoing interest in Lot 1. [*See* Doc. No. 41, at 5]. However, the Defendant have not provided evidence that the Deed in Lieu, with its reference to Lot 2, would have appeared in the chain of title for Lot 1. To the extent that the Reformation Order made the Defendants' security interest effective, that interest was released by an instrument with the correct property description.

The Defendants have also argued that the Davis Affidavit put the Trustee on notice that the debtors no longer owned Lot 1 and that the lot was to have been conveyed to WSFS. Tennessee law provides for "[a]ffidavits of scrivener's error and other affidavits in furtherance of identification and title to land" to be registered. Tenn. Code Ann. § 66-24-101(a)(27). The Defendants contend that such an affidavit, registered pursuant to Tennessee Code Annotated section 66-24-101, "shall be notice to all the world from the time [it is] noted for registration . . . and shall take effect from such time." Tenn. Code Ann. § 66-26-102.

However, even if a scrivener's affidavit filed pursuant to section 66-24-101(a)(27) were sufficient to defeat a trustee's bona fide purchaser status,[7] the Defendants have not demonstrated

---

[7] The court observes that Tennessee Code Annotated section 66-26-102 states that, "[a]ll of the *instruments* registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration . . . and shall take effect from such time." Tenn. Code Ann. § 66-26-102 (emphasis added). The parties have not addressed whether a scrivener's affidavit filed pursuant to Tennessee Code Annotated section 66-24-101(a)(27) is an *instrument*. Due to the Defendants' failure to demonstrate that the Davis Affidavit was in the relevant chain of title, the court does not find it necessary to resolve this legal question at this time.

that the Davis Affidavit would be revealed by a title search. The Davis Affidavit is in the record before the court and shows that it was recorded on September 14, 2018, at Book 2547, Page 976 in the Bradley County Register of Deeds. However, there is no evidence that the Davis Affidavit would be found in a title search of who is the owner of Lot 1 such to put a bona fide purchaser on notice. In the absence of such evidence and viewing the facts in the light most favorable to the Trustee, the court cannot say that the Davis Affidavit is constructive notice of the Defendants' interest in Lot 1. The court finds that the Defendants have not demonstrated that they are entitled to judgment as a matter of law based on the facts before the court. Accordingly, the court will deny the Defendants' motion for summary judgment.

VI.      Conclusion

For the reasons explained above, the court finds that genuine disputes of material fact exist and will DENY the parties' cross-motions for summary judgment.

A separate order of judgment will enter.

# # #